IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFRED LUNA,

    Plaintiff,

v.                                              Civil No. 03-1342 WJ/ACT

FOREMOST SIGNATURE
INSURANCE COMPANY,

    Defendant.

**<u>MEMORANDUM OPINION AND ORDER ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT</u>**

THIS MATTER comes before the Court pursuant to Plaintiff's Motion for Summary Judgment [Docket No. 17] and Defendant's Cross Motion for Summary Judgment [Docket No. 27]. Having reviewed the submissions of the parties and the applicable law, I find the motions are not well taken and will be denied.

**BACKGROUND**[1]

Defendant issued a mobile home policy of insurance no. 104-0630128531-98 to Plaintiff with a policy period from 01/02/98 to 01/02/99. The policy provides that Defendant will "pay for direct, sudden and accidental loss of or damage to: . . . your home." See Defendant's Exhibit B

---

[1] These background facts are gleaned from the undisputed material facts set forth in Plaintiff's Motion for Summary Judgment, Defendant's Cross Motion for Summary Judgment, the parties' responses to each others' undisputed material facts, and the exhibits attached to the parties' motions and other briefs. Where the facts are disputed, they are viewed in a light most favorable to the nonmoving party for the purposes of ruling on the opposing party's motion for summary judgment.

p.1.[2] Plaintiff made three separate claims on this policy on the basis of damage to his home from mold and mildew. The first was Claim No. 597-5006 for an alleged date of loss of August 21, 1998. The claim was reported on October 21, 1998. Plaintiff indicates that he noticed mold in his home in the living room and bedrooms in early 1998. Plaintiff attempted to remove mold using bleach. According to Plaintiff, the mold returned immediately. Defendant's expert asserts that mold cannot return immediately.

A swipe sample was taken from an air duct in the bathroom floor of Plaintiff's home on November 10, 1998 by Ronald L. Beethe, CIH.[3] Mr. Beethe collected the sample at the request of Plaintiff and Plaintiff's attorney. In a report dated December 5, 1998, Mr. Beethe indicated the presence of several fungi and bacteria including several species of Penicillium and the fungus Stachybotrys chartarum. Mr. Beethe's report also indicates that fungi and bacteria "capable of causing human health effects" were seemingly present in Plaintiff's home. See Plaintiff's Exhibit 1-A to Docket No. 17. The report further states that the leaking septic system could be responsible for the growth of fungi and bacteria in Plaintiff's home. Mr. Beethe testified at his deposition that mold develops under certain conditions within 24 to 72 hours of moisture becoming present in the interior of a home if the moisture is not thoroughly dried. Plaintiff contends that the cause of the mold and mildew in his home is unknown.

---

[2]The policy also excludes coverage for "loss or damage resulting from or increased by water backing up through sewers or drains or water below the surface of the ground," Id. at p. 3, for "loss or damage from continuous or repeated seepage or leakage of water or steam over a period of time from: . . . a plumbing system," Id., and for "loss or damage due and confined to leakage from rain, sleet or snow or its resulting damage whether or not wind driven." Id. at p. 4. Neither party has argued that this language entitles a party to summary judgment.

[3]The record does not indicate the meaning of the letters "CIH" following Mr. Beethe's name.

Defendant's expert indicates that the methodology used by Mr. Beethe and the reports from Mr. Beethe do not provide any useful information for a variety of reasons.  First, the reports do not indicate the measured surface area from which the swipe sample was taken.  According to Defendant's expert, this makes it impossible to determine the levels of contamination or amplification of any fungi or bacteria actually present in the Luna home.  Second, samples obtained by the swipe sample technique must be cultured, and the presence of fungi in the culture does not necessarily indicate that the fungi were actually growing on the surface from which the swipe was taken.  Defendant's expert contends that fungi spores present on the sampled surface may have been naturally deposited from ambient air.  Third, the fungi and bacteria recovered by Mr. Beethe, except for the Stachybotrys chartarum, are not unusual and are pervasive in the indoor and outdoor environment.  With regard to the Stachybotrys chartarum, Defendant's expert states this does occur naturally, and it would not be unusual to find it within a bathroom air duct, particularly one on the floor.  Defendant's expert states that fungal growth does not occur suddenly or immediately but over a period of time such that it might take weeks or even months for fungal growth to be visible.

Greg Tweed, a Claims Representative for Foremost Signature Insurance Company, inspected Plaintiff's home on January 11, 1999.  Mr. Tweed avers that, when he arrived at Plaintiff's home on that date, Plaintiff told him that a sewer line connection from the mobile home to the septic tank was found to be lose, and sewage seeped out of the loose connection.  Tweed states that Plaintiff claimed that the seepage caused warping of the exterior wall panels and mildew inside on interior wall panels.  According to Mr. Tweed, he found no damage to Plaintiff's home.  He did note a slight unevenness on the exterior wall, but considered this normal wear and

tear.  He saw no evidence of mold or mildew inside or outside the home.  Mr. Tweed states that Plaintiff told him he had wiped the mildew away with bleach.  Mr. Tweed denied Plaintiff's claim because he observed no damage, because any damage from a leak in the sewer line fell within a specific exclusion of coverage, and because the damage was not direct, sudden and accidental.

Plaintiff disputes that there was no damage to his home at the time of Mr. Tweed's January 11, 1999 inspection.  He points to a letter from Mr. Tweed dated November 24, 1999 in which Mr. Tweed concludes that "mildew and rotting damaged your mobile home."  See Plaintiff's Exhibit 2.

Plaintiff's second claim was Claim No. 656-5373.  This claim reported a loss date of January 9, 1999, but was not filed with Defendant until August 9, 1999.  In the second claim, Plaintiff claimed that mold and mildew damages his mobile home and personal belongings.  Plaintiff's third claim was Claim No. 658-5707.  This claim reported a loss date of September 1, 1999 and was filed with Defendant on September 23, 1999.  In this claim, Plaintiff claimed damage to his mobile home and personal property due to a flood.

Mr. Tweed spoke with Plaintiff on the phone on November 11, 1999 regarding Plaintiff's second and third claims.  According to Mr. Tweed, Plaintiff told him during the phone call that water had run on the mountain next to his home and saturated the leach field of his sewer system resulting in a back-up of sewage into both of his bathrooms.  Plaintiff also told him that water sat beneath the mobile home causing condensation which damaged food in his cupboards and refrigerator and warped the exterior wall panels of his home.  Plaintiff apparently claimed that mold and mildew developed in the home from a combination of the sewer back-up and the water sitting under the home.  Plaintiff acknowledged that no actual flood waters got into the home.

Mr. Tweed states that he was able to inspect the home on November 11, 1999. It appeared to Mr. Tweed that Plaintiff's second and third claim were based on the same alleged damage as Plaintiff's first claim reported in October 1998. Mr. Tweed found no water damage to the exterior of the home. He found no signs of water rivulets or soil dispersal around the home. He found no water stains on the foundation or blocks under the home. He found no gullies indicating water running underneath the home. Mr. Tweed found that the area under the home was used for storage and found boxes of old records with significant amounts of dust on them. Mr. Tweed also determined that the only way water could get under the home was from the west side which had an access opening, and the west side of Plaintiff's home apparently faces downhill.

Mr. Tweed also found no water damage to the interior of the home. While Plaintiff claimed the bathroom carpet and a bathroom wall panel had been wet, Mr. Tweed saw no signs that the carpet or wall panel had been wet. According to Mr. Tweed, Plaintiff acknowledged that there was no evidence of any damage to the bathroom at the time of the November inspection. Mr. Tweed avers that Plaintiff did could not show him any damaged personal effects at the time of the inspection. Plaintiff claimed that he had thrown out all of the damaged personal effects. Plaintiff did show Mr. Tweed a pile of clothes in a closet and said that the clothing was damaged. Mr. Tweed asked Plaintiff to show him the damage to the clothing, but Plaintiff demurred. Mr. Tweed could not see any evidence on the clothing of any damage from mold or mildew. Plaintiff's wife and daughter tried to find mildew on curtains, but could not find any. Mr. Tweed did not smell any mildew and did not observe any mold or mildew inside or outside the home. Plaintiff did show him some photos of a panel removed and mildew stains at the base of a wall on a two-by-four. Mr. Tweed states that such mildew indicates long-term leakage inside the walls of

the mobile home, and is not the result of any direct, sudden or accidental damage. Additionally, Mr. Tweed concluded that the damage shown in the photographs was due to leakage from rain, sleet or snow, and was thus excluded from coverage. Mr. Tweed denied Plaintiff's second and third claims.

Plaintiff disputes that there was no damage to his home at the time of Mr. Tweed's inspection on November 11, 1999. He again points to Mr. Tweed's letter of November 24, 1999 in which Mr. Tweed concluded that there was damage to the home from mildew and rotting. See Plaintiff's Exhibit 2. Plaintiff also disputes that exterior walls were not warped and offers photographs n support of his position. See Plaintiff's Exhibit 7.

Plaintiff filed a Complaint in this Court bringing various claims against Defendant for denial of the claims. Plaintiff's Complaint alleges that his mobile home was overcome with toxic mold which caused the home to become uninhabitable, caused him and his family to lose their personal belongings including furnishings, clothing and personal possessions, and caused personal injury to himself and his family requiring medical treatment. Plaintiff filed the instant motion for summary judgment on the issue of liability. Plaintiff's motion argues that the failure of Defendant to pay his claims was based on its determination that any damage to Plaintiff's home was not "direct, sudden and accidental." Plaintiff notes correctly that these terms are not defined in the policy, argues that the terms are ambiguous so should be construed in his favor, and urges that the Court construe the term "sudden" as meaning "unexpected." Plaintiff then requests judgment in his favor on the issue of liability because the appearance of mold and mildew in his home was unexpected from his point of view.

Defendant filed a response to Plaintiff's motion for summary judgment that is also styled as a cross motion for summary judgment. Defendant's motion urges that the policy language is clear and unambiguous and that the word "sudden" means an abrupt temporal event because the word "sudden" would be superfluous of the word "accidental" if it were construed to mean "unexpected." Defendant also argues that Plaintiff is not entitled to summary judgment regardless of the Court's ruling on the meaning of the term "sudden" because there is a remaining factual dispute with regard to whether there was any mold or mildew damage to the mobile home.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998). In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party. Worrell, 219 F.3d at 1204; Jeffries, 147 F.3d at 1228.

**DISCUSSION**

The Parties' cross-motions for summary judgment focus on the meaning of the word "sudden" in the phrase "direct, sudden and accidental" in the insurance policy at issue. This is a legal issue that must be resolved by the Court. However, the resolution of this issue does not entitle either party to summary judgment.

When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule.  Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003); Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002); Lampkin v. Little, 286 F.3d 1206, 1210 (10th Cir. 2002).  This federal district court is bound by Tenth Circuit precedent interpreting state law.  See United States v. Spedalieri, 910 F.2d 707, 709 n. 2 (10th Cir.1990).

Under New Mexico law, questions regarding insurance policies are resolved "by interpreting their terms in accordance with the same principles which govern the interpretation of all contracts."  Ponder v. State Farm Mut. Auto. Ins. Co., 12 P.3d 960, 964 (N.M. 2000).  When the language of an insurance policy is clear and unambiguous, a court must give effect to the language and enforce it as written.  Id.  Insurance contracts must be construed as a whole considering its declarations, endorsements and any other attachments.  Rummel v. Lexington Ins. Co., 945 P.2d 970, 976 (N.M. 1997).  In construing insurance policy provisions, ambiguities arise when the language of a provision is susceptible of more than one meaning.  Ponder, 12 P.3d at 964-65.  A court may consider extrinsic evidence to determine whether an ambiguity exists.  Id. at 965.  However, a court must first look to whether the meaning of an apparent ambiguity is explained by other parts of a policy.  Rummel, 945 P.2d at 977.  While a court's construction of an insurance contract is guided by the reasonable expectations of the insured, and an ambiguity will normally be construed against the insured, a court must adopt the interpretation that is most in accord with reason and the probable expectation of the parties, and an ambiguous term will not be construed in favor of the insured when the term does not reasonably bear that interpretation.  Id.

The meaning of the phrase "sudden and accidental" in insurance policies has been litigated extensively in the context of pollution exclusion clauses in comprehensive general liability insurance policies.  The Court has perused no less than eighteen cases interpreting the word "sudden" as it appears in pollution exclusion clauses.  As one court noted, the meaning of the word "sudden" in pollution exclusion clauses is an issue that has "precipitated a legal war in state and federal courts from Maine to California."  Sokoloski v. American West Ins. Co., 980 P.2d 1043, 1045 (Mont. 1999) (internal quotations and citations omitted).  There has been only meager litigation of similar language in other insurance contexts, and this Court has found only two cases litigating the meaning of the word "sudden" in other than pollution exclusion clauses.  One such case involved an insurance policy covering boilers and machinery.  See Anderson & Middleton Lumber Co. v. Lumbermen's Mut. Cas. Co., 333 P.2d 938 (Wash. 1959).  Another case involved a special farm package policy providing coverage for damage to livestock caused by electrical current.  See Hudson v. Farm Family Mut. Ins. Co., 697 A.2d 501 (N.H. 1997).

   Plaintiff's insurance policy provides comprehensive coverage for a mobile home.  I do not believe I am stretching the limits of believability in suggesting that there are significant numbers of mobile homes in this nation.  I would even go so far as to postulate that there are greater numbers of insurance policies covering mobile homes than there are policies covering boilers, machinery, and electrocution of livestock.  Hence, my astonishment that I have not found a single case interpreting the word "sudden" in the context of a mobile home policy.  Certainly, words that have caused such heated controversy in other types of policies should be creating quite a lot of litigation between insurance companies and mobile home owners if this language has been commonly used in mobile home policies.  But the lack of cases interpreting similar mobile home

9

insurance policy language does not leave the Court without guidance in light of the many cases interpreting similar language in other types of policies, and this Court is certainly not charting new territory.

Plaintiff argues that these other cases are irrelevant. First, Plaintiff notes that none of the cases were decided by New Mexico appellate courts. Plaintiff then notes that the only case interpreting New Mexico law, decided by the Tenth Circuit, applied to a pollution exclusion clause. Plaintiff states that the Tenth Circuit case is irrelevant because it addresses language in a pollution exclusion clause, and the present case does not involve a pollution exclusion clause. While Plaintiff has good reason to try to distinguish the Tenth Circuit case and many of the other cases interpreting pollution exclusion clauses, the distinction is one without a difference.

The language of the pollution exclusion clauses addressed in case law generally states that the insurance does not cover injury or damage arising out of the discharge of pollutants, but that it does cover such injury or damage when the discharge of pollutants is **sudden and accidental**. See e.g., Mesa Oil, Inc. v. Insurance Co. of North America, 123 F.3d 1333, 1336 (10th Cir. 1997); Sharon Steel Corp. v. Aetna Cas. & Sur. Co., 931 P.2d 127, 133 (Utah 1997). The insurance language at issue here states that the insurer will pay for **direct, sudden and accidental** loss of or damage to the insured's home. At issue in all of the cases interpreting the word "sudden" in the pollution exclusion clauses was whether the word encompassed a temporal element and means "abrupt" or whether it merely means "unexpected." At issue in this case is whether the word sudden encompasses a temporal element. Most of the pollution exclusion clause cases interpret the word "sudden" in light of its proximity to the word "accidental." See e.g., Mesa Oil, Inc., 123 F.3d at 1340; Sokoloski v. American West Ins. Co., 980 P.2d 1043,

1045 (Mont. 1999); Northville Indus. Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 89 N.Y.2d 621, 633 (N.Y. 1997).  At issue in this case is whether the meaning of the word "sudden" is affected by its proximity to the word "accidental."   Nearly all of the pollution exclusion clause cases use general principles of contract interpretation similar, if not identical, to the principles used in New Mexico to determine the meaning of the word "sudden."  See e.g., Mesa Oil, Inc., 123 F.3d at 1340-41; North Pacific Ins. Co. v. Mai, 939 P.2d 570, 572 (Idaho 1997).  Therefore, the differences between the pollution exclusion cases and the instant case are superficial, have no bearing on the substance of the analysis contained therein, and the Court may reasonably look to these cases for guidance on the issue before it and rely on such cases as precedent.

   Plaintiff argues that this Court should interpret the word "sudden" as meaning "unexpected, unforeseen, unprepared for."  Plaintiff states that the dictionary definition of the word "sudden" includes these definitions in both Black's Law Dictionary and Webster's New Collegiate Dictionary.  Because the dictionary contains these definitions, Plaintiff argues that the term, undefined in the insurance policy, is susceptible of more than one definition and is thus ambiguous.  Plaintiff then urges that the term must be construed in his favor to mean "unexpected, unforeseen, unprepared for."

   Defendant argues that the term "sudden" in the insurance policy is unambiguous especially in light of its proximity to the word "accidental."  Defendant cites to Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148, 1153 (N.M. 2001) for the proposition that New Mexico courts define the word "accidental" as unexpected or unintended.  According to Defendant, the word "sudden" paired with the word "accidental" would be superfluous and redundant if it means merely "unexpected," and "sudden"  must be defined as including a temporal component.

11

In Mesa Oil, Inc., the Tenth Circuit was faced with the issue whether the New Mexico courts would interpret the word "sudden" in a pollution exclusion clause as having a temporal component. 123 F.3d at 1339. The court reviewed the many other cases interpreting the word "sudden" and noted a split in the authority. Id. The court then noted that it had determined in another case, not decided under New Mexico law, that the plain language of a pollution exclusion clause imposed a temporal requirement on the word "sudden" as to read the exclusion otherwise would render the word "sudden" superfluous in light of the word "accidental." Id. (citing Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522 (10th Cir. 1995)). The court ultimately predicted that a New Mexico court would conclude that the plain meaning of the word "sudden" would encompass a temporal component and would require an event to occur quickly or abruptly. Id. at 1340.

I am persuaded that the Tenth Circuit holding in Mesa Oil, Inc. is conclusive of the issue in this case. The term "sudden" in the instant insurance policy encompasses a temporal component and means abrupt or quickly. Plaintiff is therefore not entitled to summary judgment and his motion will therefore be denied. Neither is Defendant entitled to summary judgment. Plaintiff's insurance policy covers damages or losses that are "direct, sudden and accidental." There is a dispute of fact with regard to whether the alleged mold, mildew or other fungi developed abruptly or quickly. Accordingly, Defendant's motion will also be denied.

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Docket No. 17] is hereby DENIED.

IT IS FURTHER ORDERED that Defendant's Cross Motion for Summary Judgment [Docket No. 27] is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE